FILED
DECEMBER 6, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| KAREN MARCUS, individually and on behalf of all others similarly situated ) ) ) Plaintiff, ) ) v. ) ) MERCEDES-BENZ USA, LLC. and ATX GROUP, INC. ) ) ) Defendants. ) ) ) | Case No.<br><br>**07 C 6892**<br><br>JURY DEMANDED **JUDGE COAR**<br>**MAGISTRATE JUDGE SCHENKIER** |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.      Plaintiff, Karen Marcus, brings this action to secure redress for the actions of defendants in selling vehicles equipped with TeleAID wireless communications and security systems that were designed to operate only on an analog network ("TeleAid analog systems"), without disclosing the material fact that the TeleAid analog systems were obsolete and would cease to function on January 1, 2008.

**PARTIES**

2.      Plaintiff Karen Marcus is a resident of the Northern District of Illinois.

3.      Defendant Mercedes-Benz USA, LLC (MBUSA) is a Delaware corporation with its principal place of business in Michigan. It does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

4.      ATX Group, Inc. (ATX) is a Texas corporation with its corporate headquarters located at 8550 Freeport Parkway, Irving, Texas 75063-2547.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction under 28 U.S.C. §1332(d). Plaintiff is a citizen of Illinois. Defendants are citizens of Delaware and Texas. This amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs.

6. Venue is proper in this District because plaintiff resides here.

**FACTS**

7. ATX Group is presently the world's second-largest telematics provider. In January, 1999 ATX teamed with Mercedes-Benz to introduce TeleAid.

8. Mercedes-Benz USA is a wholly-owned subsidiary of DaimlerChrysler North American Holding Corporation. It is responsible for the sales, service and marketing of Mercedes-Benz and Maybach products in the United States. The company sold 248,080 vehicles in the U.S. in 2006.

9. MBUSA equipped new vehicles with the TeleAid analog system, a wireless communication system that provides various safety, security and convenience services, including:

    I.      Automatic notification of air bag deployment;

    ii.     Tracking of stolen vehicles;

    iii.    Summoning of emergency assistance;

    iv.    Remote door unlocking;

    v.     Continuous monitoring;

    vi.    Customer care & real time ownership information;

    vii.   Concierge services.

    viii.  Voice Delivered Traffic Report and Route Assistance (optional)

10. The analog systems were designed to work on an analog network,

**PLAINTIFF'S WAS SOLD AN OBSOLETE SYSTEM**

11. On July 19, 2004, plaintiff purchased a new Mercedes-Benz. Simultaneously with the purchase of her car, she executed a subscriber agreement for TeleAid with MBUSA and ATX.

12. In addition, MBUSA issued a written warranty that covered the TeleAid unit in the vehicle.

13. The written warranties and subscription agreement were material and a basis of the bargain entered into by plaintiff and each class member.

14. Defendants represented in their written warranties and brochures that the TeleAid system offered access to TeleAid services 24 hours per day, 7 days a week.

15. At the time plaintiff and the class members purchased the TeleAid analog system, it was obsolete. Analog technology was in the process of being replaced by digital technology.

16. In fact, defendants inserted an exculpatory clause into the subscriber agreement which provides:

> Your TeleAid system uses analog cellular telephone signals. If the supporting wireless carrier and/or its roaming partners terminate or restrict analog service TeleAid Services may not be available.

17. However, at the time of plaintiff's execution of the subscriber agreement, Defendants knew the analog technology was obsolete and planned to switch to digital technology.

18. In November, 2002, the U.S. Federal Communications Commission (FCC) ruled that cellular carriers would no longer be required to support the analog cellular network as of

early 2008.

19. At the time of the FCC ruling, it was well known that cellular carriers would not continue to support analog service.

20. As such, defendants' clause that analog service may not be available was misleading as they knew it would not be available.

21. Defendants deliberately concealed from and failed to disclose to plaintiffs and the class members that the TeleAid analog system was defective.

22. Defendants repeatedly and pervasively touted the Teleaid analog system as a safety and security feature.

23. For example, a Mercedes brochure stated:

**Tele Aid gives you protection, security and peace of mind.**

**If You Are in an Accident**

When an air bag or seat belt Emergency Tensioning Device is deployed, your vehicle automatically notifies the Tele Aid Response Center. We summon help immediately as well as contact the important people in your life. Orbiting satellites tell us exactly where you are – something a cell phone can't do.

**IF YOU HAVE A BREAKDOWN**

Press the wrench button and we'll get Roadside Assistance to you more quickly and efficiently because we know where you are.

**IF YOU ARE IN TROUBLE**

Press the SOS Button and we'll send Emergency Service assistance to you. Or we can just stay on the line if you think you might be in danger.

**IF YOUR CAR IS STOLEN**

We help the policy find it. Over 80% of Mercedes-Benz vehicles reported stolen are recovered when tracked by Tele Aid.

**IF YOU LOCK YOUR KEYS IN YOUR CAR**

Give us a call, provide your password, and we'll open it up for you.

**A CELL PHONE CAN'T ALWAYS HELP YOU.**

Alvaro de Prat of Coral Gables, Florida, was on his way home at night in a torrential downpour when a van rear-ended his Mercedes-Benz. The impact propelled his car forward into another car. *"It was a terrible feeling because it was dark, it was raining and everything in my pocket – including my cell phone – ended up under my seat,"* Mr. de Prat recalls. *"So, I couldn't even call anyone for help."* But seconds later, help came when a Tele Aid Response Specialist asked if he was all right. Tele Aid then directed the Highway Patrol to his location and called his wife. *"This is the first car accident I've had and I can't tell you how much it helps to have somebody to talk to and reassure you that help's on the way. Mercedes-Benz is the best and will always be my brand of car."*

**WHEN TIME COUNTS, COUNT ON TELE AID**

With Tele Aid, you have fewer things to worry about during a critical situation. We're here any time you need us – 24 hours a day, every day.
Tele Aid officers a wide range of services. To learn more, visit MBUSA.com or simply press the I-button.

24. Defendants' promotion of the Tele Aid system in terms such as those set forth above was so pervasive that all purchasers of the system necessarily received it.

25. There was no reason to purchase Tele Aid system except the purchaser's reliance on its ability to provide the described functions and services.

26. The fact that such a system would cease to function and cease providing safety and security on a future date was a material fact, necessary to be disclosed in order to make defendants' statements not misleading.

27. Defendants have been notified of the defect.

28. Defendants have had ample opportunity to repair or replace the defective TeleAid analog system. Defendants have not done so.

29. MBUSA sent plaintiff a letter dated June 22, 2007 stating that it would stop providing TeleAid service on July 20, 2007 unless plaintiff upgraded to a digital unit.

30. Plaintiff's husband contacted her dealership and was informed that the upgrade would cost between $800.00 to $1,200.00.

31. On June 29, 2007, plaintiff's husband wrote MBUSA a letter protesting the charge for an upgrade.

32. MBUSA responded to plaintiff via letter dated July 10, 2007 asserting that it could not anticipate the changes to the wireless networks and required plaintiff to pay for an upgrade or her service would be cancelled.

33. MBUSA's letter also asserted that it did its upmost to develop and incorporate the changes for digital reception, but it took as late as model year 2005 for some models to complete.

34. While MBUSA was working on incorporating its changes, it failed to convey to plaintiff and the putative class that any changes would be needed on their model vehicles.

35. Resort to any informal dispute settlement mechanism or further opportunity to cure the breach of warranty would be futile, in that in some cases defendants have offered to remedy the breach only if payment is made.

## TOLLING OF LIMITATIONS

36. Plaintiffs and class members did not discover and had no reasonable means of discovering the facts until a date within the limitations periods governing this action.

37. Any applicable periods of limitations have been tolled because defendants knowingly and actively concealed the facts alleged herein, and such facts were not reasonably

knowable by plaintiffs and the class members prior to disclosure by defendants in July March 2007.

## CLASS ALLEGATIONS

38.    Plaintiffs bring suit on behalf of a class.

39.    The class consists of all persons with Illinois addresses who own vehicles equipped with Tele Aid analog systems that were purchased after the 2002 FCC Rule that cellular carriers would no longer be required to support the analog cellular network as of early 2008.

40.    The class is so numerous that joinder of all members is impractical.

41.    There are thousands of class members. Defendants have admitted in public statements on their web sites that TeleAid is the world's second-largest telematics provider and that MBUSA sold 248,080 vehicles in the U.S. in 2006 alone. Even if only 4% of these vehicles (9,992) are registered in Illinois, numerosity is satisfied.

42.    There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. These questions include:

A.    Whether defendants breached their express written warranties by selling vehicles equipped with defective TeleAid analog systems and then failing to repair or replace the systems free of charge.

B.    Whether defendants breached implied warranties by selling vehicles equipped with defective TeleAid analog systems and then failing to repair or replace the systems free of charge.

C.    Whether defendants engaged in unfair or deceptive practices, in violation of the Illinois Consumer Fraud Act, by selling vehicles equipped with defective TeleAid analog systems while concealing the defect.

      D.      Whether defendants committed fraud by selling vehicles equipped with defective TeleAid analog systems while concealing the defect.

      E.      Plaintiffs' claims are typical of the claims of the class members. All are based on the same legal and factual theories.

      F.      Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have retained counsel experienced in handling class actions. Neither plaintiffs nor plaintiffs' counsel have any interests which might cause them not to vigorously pursue this claim.

      G.      A class action is a superior method for the fair and efficient adjudication of this controversy. The key liability issues are the same for all class members.

### COUNT I – BREACH OF EXPRESS WRITTEN WARRANTY

43.      Plaintiffs incorporate by reference ¶¶ 1-42.

44.      Defendants breached the new vehicle limited warranty supplied to plaintiffs and each class member by supplying an TeleAid analog system which defendants knew was defective when furnished, in that it would cease to function on December 31, 2007.

45.      Plaintiffs bring suit pursuant to §2-313 of the Uniform Commercial Code and the Magnuson Moss Consumer Warranty Act, 15 U.S.C. §2310.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

      A.      Appropriate compensatory damages;

      B.      Attorney's fees (pursuant to 15 U.S.C. §2310), litigation expenses and cost of suit.

C. Such other or further relief as the Court deems appropriate.

**COUNT II – BREACH OF IMPLIED WARRANTY**

46. Plaintiffs incorporate by reference ¶¶ 1-42.

47. Defendants breached the implied warranties of merchantability (section 2-314 of the Uniform Commercial Code, 810 ILCS 5/2-314) by selling and leasing defective TeleAid analog systems. The systems were defective, failed to conform to the labeling on the vehicle, and failed to conform to the contract description.

48. Plaintiffs are entitled to sue for the implied warranty breach under the Magnuson Moss Consumer Product Warranty Act, 15 U.S.C. §2510.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A. Appropriate compensatory damages;

B. Attorney's fees (pursuant to 15 U.S.C. §2310), litigation expenses and cost of suit.

C. Such other or further relief as the Court deems appropriate.

**COUNT III – ILLINOIS CONSUMER FRAUD ACT**

49. Plaintiff incorporates ¶¶ 1-42.

50. Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by selling TeleAid analog systems without disclosure of the material fact that they used analog technology and that such technology would be obsolete and cease to function by a date certain.

51. Plaintiff and each class member suffered damages as a result of defendant's

9

Case 1:07-cv-06892 Document 1 Filed 12/06/07 Page 10 of 11

conduct.

52. Defendants engaged in such conduct in the course of trade and commerce.

53. Defendants' conduct caused its customers to bear the cost of its return policy.

54. Defendants should be enjoined from committing similar violations in the future.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A. Appropriate compensatory damages;

B. Attorney's fees pursuant to the CFA, litigation expenses and cost of suit.

C. Such other or further relief as the Court deems appropriate.

## COUNT IV – UNJUST ENRICHMENT

55. Plaintiff incorporates ¶¶ 1-42.

56. As a proximate and foreseeable result of defendants' actions, plaintiff suffered loss and damage while defendants profited and benefitted from the sale of vehicles containing TeleAid analog systems.

57. Defendants have also unjustly benefitted from the sale of the upgraded units when the need to purchase the upgraded unit resulted from defendants' actions.

58. Defendants have accepted the benefits of sale of vehicles containing TeleAid analog systems and the sale of the upgraded units.

59. Defendants have unjustly enriched themselves at the expenses of plaintiff.

60. Plaintiff is entitled to disgorgement and restitution of defendants' profits and benefits resulting from the actions described herein.

conduct.

52. Defendants engaged in such conduct in the course of trade and commerce.

53. Defendants' conduct caused its customers to bear the cost of its return policy.

54. Defendants should be enjoined from committing similar violations in the future.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A. Appropriate compensatory damages;

B. Attorney's fees pursuant to the CFA, litigation expenses and cost of suit.

C. Such other or further relief as the Court deems appropriate.

## COUNT IV – UNJUST ENRICHMENT

55. Plaintiff incorporates ¶¶ 1-42.

56. As a proximate and foreseeable result of defendants' actions, plaintiff suffered loss and damage while defendants profited and benefitted from the sale of vehicles containing TeleAid analog systems.

57. Defendants have also unjustly benefitted from the sale of the upgraded units when the need to purchase the upgraded unit resulted from defendants' actions.

58. Defendants have accepted the benefits of sale of vehicles containing TeleAid analog systems and the sale of the upgraded units.

59. Defendants have unjustly enriched themselves at the expenses of plaintiff.

60. Plaintiff is entitled to disgorgement and restitution of defendants' profits and benefits resulting from the actions described herein.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

    A.    Appropriate compensatory damages including reimbursement, restitution ad disgorgement from defendants of the benefits conferred by plaintiff and the class;

    B.    Such other or further relief as the Court deems appropriate.

By: /s/Keith J. Keogh
Her Attorney

Keith J. Keogh
Alexander H. Burke
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe Street, Suite 2000
Chicago, Illinois   60606
312.726.1092 (office)
312.726.1093 (fax)
Attorney No. 39042

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/Keith J. Keogh
Keith J. Keogh